**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| CATHERINE GATZIMOS,<br><br>Plaintiff,<br><br>v.<br><br>ADMINISTRATOR OF NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION,<br><br>Defendant. | No. __________________ |

## COMPLAINT

This is a civil action by Catherine Gatzimos, Plaintiff, against the Administrator of the National Oceanic and Atmospheric Administration for declaratory and injunctive relief as set forth herein.

## INTRODUCTION

1. Hawaii's natural resources are so central to the State's identity that its Constitution *requires* the government to promote the reasonable use of them. *See* Haw. Const. art. XI.

2. Before September 2021, spinner dolphins were among Hawaii's most popular natural attractions. Spinner dolphins are playful animals known for seeking human interaction and barrel rolling out of the water.

3. Heeding their constitution's call, Hawaiians once fostered a prosperous relationship with spinner dolphins.

4. Psychotherapists, for example, once relied on these dolphins' friendly presence for specialized therapy.

5. Plaintiff, Catherine Gatzimos, is among those who have found healing from swimming with spinner dolphins.

6. Yet despite all its benefits, this relationship between humans and dolphins was destroyed in September 2021.

7. The cause was a rule issued by the Deputy Assistant Administrator for Regulatory Programs ("DAARP"), a subordinate employee of Defendant, the Administrator for the National Oceanic and Atmospheric Administration ("NOAA"). *See Swim With and Approach Regulation for Hawaiian Spinner Dolphins Under the Marine Mammal Protection Act*, 86 Fed. Reg. 53,818 (Sep. 28, 2021) ("Approach Rule" or "Rule"). In issuing the Approach Rule, the DAARP did more than just sign the Rule: he also exercised the substantive rulemaking power of the underlying statute by determining that the policy embodied by the Rule should be promulgated as a binding federal regulation.

8. The Approach Rule permanently requires the public to avoid spinner dolphins, including by evading dolphins who approach for human interaction—not because spinner dolphins are in decline, nor even because these swims could endanger dolphin populations. Rather, the DAARP concluded that allowing people and dolphins to swim together may cause dolphins to expend energy they really ought to use hunting and nurturing their young. *Id.* at 53,819.

9. But the Appointments Clause requires those who exercise rulemaking to be appointed as "Officers of the United States." *Buckley v. Valeo*, 424 U.S. 1, 140–41 (1976) (per curiam).

10. The DAARP was not appointed as an officer. Therefore, the Approach Rule was issued unconstitutionally.

11. In response to a prior suit challenging the Rule for violating the Appointments Clause, the Administrator of NOAA attempted to ratify the Approach Rule after it was issued. *See* Swim With and Approach Regulation for Hawaiian Spinner Dolphins Under the Marine Mammal Protection Act; Ratification of Regulation, 87 Fed. Reg. 42,104 (July 14, 2022). The Administrator's attempted ratification did not cure the Appointments Clause defect, however.

12. Thus, to preserve the political accountability guaranteed by the Appointments Clause, the Approach Rule must be vacated.

**JURISDICTION AND VENUE**

13. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); *id.* § 2201 (authorizing declaratory relief); *id.* § 2202 (authorizing injunctive relief); and 5 U.S.C. §§ 701–06 (judicial review provisions of the Administrative Procedure Act).

14. Venue in the Middle District of Tennessee is proper because the Defendant is an officer of the United States and the Plaintiff resides within this judicial district. 28 U.S.C. § 1391(e).

**PARTIES**

***Plaintiff***

15. Catherine Gatzimos resides within the boundaries of the Middle District of Tennessee.

16. Before the Approach Rule took effect, Gatzimos partook in dolphin-assisted therapy in Hawaii and separately swam with dolphins under the supervision of a guide. Swimming with dolphins had a powerful therapeutic effect on Gatzimos, assisting her in recovering from a traumatic event she experienced in 2015.

17. Because of the issuance of the Approach Rule, Gatzimos cannot continue to partake in dolphin-assisted therapy or otherwise swim with dolphins. If not for the Rule, she would

continue to travel to Hawaii and partake in dolphin-assisted therapy, which her prior therapist would seek to resume offering in the absence of the Rule. In the absence of that option, Gatzimos would seek to swim with spinner dolphins outside of a therapy context.

18. Gatzimos always interacted with dolphins respectfully. During therapy and her other sessions swimming with dolphins, Gatzimos would ride an early-morning vessel out into the Hawaiian waters. The vessel would gently float up to pods of spinner dolphins that were active, not resting. Gatzimos would drop slowly into the water, where she would wait for a dolphin to approach her. When a dolphin did so, Gatzimos would swim with the dolphin in a slow, relaxed manner. Gatzimos never reached her hands out to the dolphins. Nor did Gatzimos ever chase the dolphins. Gatzimos was always out of the water by mid to late morning to give the dolphins ample time to rest.

19. Swimming with dolphins radically transformed Gatzimos's perspective on her life and past experiences. She found serenity despite her trauma, took up a productive vocation, and became an advocate for responsible stewardship of the environment.

20. Gatzimos has never been cited for harming or harassing a dolphin or any kind of wildlife.

***Defendant***

**21.** The NOAA Administrator is the head of NOAA, an agency within the Department of Commerce. Reorganization Plan No. 4 of 1970, § 2(b), 35 Fed. Reg. 15,627 (Oct. 6, 1970). NOAA is charged by law with administering the relevant portions of the Marine Mammal Protection Act, 16 U.S.C. §§ 1361 et seq. ("Act" or "MMPA"). *See* 16 U.S.C. § 1362 (12)(A)(i); *Defs. of Wildlife v. Gutierrez*, 532 F.3d 913, 915 (D.C. Cir. 2008).

## LEGAL BACKGROUND

### *The Marine Mammal Protection Act*

22. Congress passed the Marine Mammal Protection Act because "marine mammals have proven themselves to be resources of great international significance, esthetic and recreational as well as economic." 16 U.S.C. § 1361(6). To protect these values, marine mammals are to be regulated pursuant to "sound policies of resource management." *Id.*

23. In furtherance of these goals, the Act prohibits "taking" any marine mammal. 16 U.S.C. § 1372(a)(1).

24. "Take" is defined to include "harass," *id.* § 1362(13), which includes "any act of pursuit, torment, or annoyance which … has the potential to disturb a marine mammal or marine mammal stock in the wild by causing disruption of behavioral patterns, including, but not limited to, migration, breathing, nursing, breeding, feeding, or sheltering," *id.* § 1362(18)(A)(ii).

25. The Act authorizes the Secretary of Commerce to issue rules that are "necessary and appropriate to carry out the purposes of" the Act. *Id.* § 1382(a). This rulemaking power has been delegated to the Assistant Administrator for Fisheries ("Assistant Administrator" or "AA") and DAARP.

### *The Appointments Clause*

26. The Appointments Clause dictates how officers of the federal government must be appointed. *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam).

27. An officer—as distinguished from an employee—is anyone who exercises "significant authority pursuant to the laws of the United States." *Id.* Issuing rules, for instance, is an exercise of significant authority. *Id.* at 140–41.

28. The Constitution recognizes two types of officers: principal officers and inferior officers. *See Edmond v. United States*, 520 U.S. 651, 661 (1997).

29. Inferior officers are those whose work is "directed and supervised" by a Senate-confirmed superior. *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021). All other officers are principal officers.

30. An officer is so supervised if he (1) is subject to administrative oversight; (2) is removable at will; and (3) cannot "render a final decision on behalf of the United States" without review. *Edmond*, 520 U.S. at 664–65.

31. In some circumstances, the third factor alone is dispositive: If an officer has unreviewable power to render a "decision on behalf of the United States," then he is a principal officer. *Arthrex*, 594 U.S. at 14. Otherwise, an officer's status depends on a weighing of all three factors. *See Edmond*, 520 U.S. at 664–65.

32. Principal and inferior officers may be appointed by different means.

33. Principal officers must be nominated by the President and confirmed by the Senate. *Arthrex*, 594 U.S. at 12.

34. This is also the default mode of appointment for inferior officers. But Congress may direct that an inferior officer be appointed by "the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* at 12–13.

35. Only employees—those who lack any significant federal authority at all—may be selected by other means.

36. "[M]ore than a matter of etiquette or protocol," this structure ensures that all officials with significant authority are appointed accountably, while officers appointed with less scrutiny are closely controlled by Senate-confirmed officers. *Buckley*, 424 U.S. at 140–41.

***Ratification Doctrine***

37. The doctrine of ratification originated in the common law of agency but "has long colored both constitutional and administrative-law questions." *Wille v. Lutnick*, 158 F.4th 539, 546 (4th Cir. 2025).

38. A ratification occurs when a principal affirms a prior act that was taken without his authorization by a would-be agent. Under the doctrine of ratification, the principal's affirmation gives effect to the agent's act as though the act had been authorized beforehand. Restatement (Third) of Agency §§ 4.02–4.03 (Am. L. Inst. 2006).

39. Because ratification is merely a retroactive authorization, "the same limitations apply to the ratification of acts as apply to their authorization." Restatement (Second) of Agency § 84 cmt. A (Am. L. Inst. 1958); *Wille*, 158 F.4th at 547.

40. If an official cannot delegate an action to a subordinate, then he cannot ratify that action. *See Wille*, 158 F.4th at 550. And for the official to delegate an action to a subordinate, the subordinate must have the capacity to take that action.

41. Employees lack the capacity to make rules, because rulemaking is a significant authority reserved for officers. *Buckley*, 424 U.S. at 140–41. As a result, an officer cannot delegate rulemaking power to an employee. Rather, he may delegate to an employee "only those acts" that—unlike rulemaking—are "ministerial" and do "not require independent discretion." *Wille*, 158 F.4th at 550.

42. Accordingly, an officer cannot *ratify* a rule issued by an employee; he may ratify "only those acts" of an employee that are "ministerial" and do "not require independent discretion." *Id.*

43. This limitation correlates with ratification's narrow function, which, again, is no more than to "operate[] upon the act ratified precisely as though authority to do the act had been previously given[.]" *Cook v. Tullis*, 85 U.S. 332, 338 (1873).

44. Additionally, "'ratification' has retrospective effect only." *Fortin v. Comm'r of Soc. Sec.*, 112 F.4th 411, 427 (6th Cir. 2024), *cert. denied sub nom. Fortin v. Dudek*, 145 S. Ct. 2730 (2025). So, like any other retroactive agency action, ratification requires "express congressional authority." *Nat'l Min. Ass'n v. DOL*, 292 F.3d 849, 859 (D.C. Cir. 2002); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 207 (1988). Therefore, a principal officer may not ratify an action without express statutory authority to do so.

## FACTUAL BACKGROUND

### ***Hawaiian Spinner Dolphins***

45. Hawaiian spinner dolphins are relatively small, social dolphins named for their acrobatic aerial displays. The dolphins are not endangered or threatened. To the contrary, "[s]pinner dolphins are common and abundant throughout the entire Hawaiian Archipelago[.]" Nat'l Marine Fisheries Serv., *Final Environmental Impact Statement and Regulatory Impact Review* 82 (June 2021).[1]

46. Spinner dolphins typically hunt in the open ocean at night and return to the Hawaiian Islands in the early morning to socialize. *Id.* at 85. These daytime activities tend to take place in shallow, nearshore waters, where the dolphins can socialize with each other and humans while safe from predators. *Id.* "Upon arrival [to nearshore waters], the dolphins exhibit a high degree of social interactions[.]" *Id.* at 86.

[1] https://www.fisheries.noaa.gov/s3//2021-07/enhancing-protections-for-hawaiian-spinner-dolphins-feis-508.pdf?VersionId=null.

47. After their social time ends, the dolphins spend just "four to five hours" resting before returning to open waters to forage again. *Id.* In Oahu, for example, the dolphins' rest hours take place from "midday to late afternoon." *Id.* at 87.

***The Approach Rule***

48. On September 28, 2021, the DAARP, Samuel Rauch, issued the Approach Rule.

49. In issuing the Approach Rule, the DAARP did more than just sign the Rule: he exercised the substantive rulemaking power of the underlying statute by determining that the policy embodied by the Rule should be promulgated as a binding federal regulation.

50. The Approach Rule prohibits "swimming with and approaching a Hawaiian spinner dolphin within 50 yards." Approach Rule, 86 Fed. Reg. at 53,818. The Rule also requires anyone approached by a spinner dolphin to "take[] immediate steps to move away from the animal." *Id.* at 53,841.

51. Violating the Approach Rule is a federal crime, punishable by a year in prison and a $20,000 fine, 16 U.S.C. § 1375(b), as well as a $35,574 civil penalty, 15 C.F.R. § 6.3(f)(11).

52. The Approach Rule admits that "there is not clear evidence of population decline or adverse biological impacts" from human-dolphin socialization. Approach Rule, 86 Fed. Reg. at 53,824.

53. However, the DAARP posited that allowing spinner dolphins to socialize with people "can reduce the amount of energy available to forage and care for young," which, in turn, "could potentially cause negative population-wide impacts." *Id.* at 53,819. Through this chain of speculation, the DAARP concluded that permitting dolphins to socialize with humans may sufficiently meet the statutory definition of "harassment" to justify the Rule. *Id.* at 53,822.

54. The Approach Rule thus seeks to protect spinner dolphins from their natural desire to socialize with humans.

***The Ratification***

55. In July 2022, a group of therapists and small-business owners challenged the validity of the Approach Rule under the Appointments Clause. *Wille*, 158 F.4th at 545.

56. To evade judicial review, NOAA Administrator Spinrad attempted to ratify the issuance of the Approach Rule.

57. To that end, the NOAA Administrator issued a ratification in the Federal Register, claiming he thereby "affirm[ed] and ratif[ied] the Approach Rule." Swim With and Approach Regulation for Hawaiian Spinner Dolphins Under the Marine Mammal Protection Act; Ratification of Regulation, 87 Fed. Reg. 42,104, 42,104 (July 14, 2022).

58. The stated purpose of the ratification, issued in July 2022, was to "remove any doubt" that the Approach Rule had been valid from the date of its original passage, September 28, 2021. *Id.*

**ALLEGATION FOR DECLARATORY AND INJUNCTIVE RELIEF**

59. Gatzimos has a significant interest in whether the Approach Rule was lawfully promulgated. Gatzimos is unable to continue partaking in dolphin-assisted therapy or otherwise to swim with dolphins because of the Approach Rule. If not for the Rule, she would continue to travel to Hawaii and partake in dolphin-assisted therapy, which her prior therapist would seek to resume offering in the absence of the Rule. In the absence of that option, Gatzimos would seek to swim with spinner dolphins outside of a therapy context.

60. The Approach Rule thus imposes significant hardship on Gatzimos.

61. A decision declaring the Approach Rule to be inconsistent with the Appointments Clause would remedy these injuries by restoring Gatzimos's ability to resume dolphin-assisted therapy and improve her mental health.

62. Gatzimos has no plain, speedy, and adequate remedy at law for her injuries. Money damages in this case are not available.

63. This case is currently justiciable because the Approach Rule went into effect on October 28, 2021. Approach Rule, 86 Fed. Reg. at 53,818.

64. The *Wille* case filed in 2022 could have alleviated Gatzimos's plight by vacating the Rule, but, focusing only on Rauch's ministerial signature of the Rule and not his substantive act in issuing it, the Fourth Circuit entered judgment in that case for the government at the end of 2025.

65. Therefore, declaratory and injunctive relief are appropriate to resolve this controversy.

## CLAIM FOR RELIEF
## (U.S. Const. art. II, § 2, cl. 2; 5 U.S.C. § 706(2)(B))

66. The preceding paragraphs are incorporated herein by reference.

67. The Approach Rule is subject to judicial review under the Administrative Procedure Act. 5 U.S.C. §§ 704, 706.

### *Unconstitutional Action by the DAARP*

68. In issuing the Approach Rule, the DAARP, using the power delegated to him, exercised the substantive rulemaking power of the MMPA by determining that the policy embodied by the Rule should be promulgated as a binding federal regulation. He did not merely sign the Rule.

69. Because rulemaking powers are significant powers, the DAARP wielded power reserved for officers of the United States.

70. Additionally, the DAARP holds a continuing position.

71. Yet, on information and belief, the DAARP was hired as a career civil servant, not appointed as an officer pursuant to the Appointments Clause. His issuance of the Rule was therefore unlawful.

72. Accordingly, the Approach Rule must be vacated.

***In the Alternative—Unconstitutional Action by the Assistant Administrator***

73. The DAARP issued the Approach Rule. Even if the Assistant Administrator issued the Approach Rule, however, it must still be vacated because the AA was improperly appointed.

74. To begin with, the AA is an officer because he occupies a continuing position and possesses significant authority.

75. Specifically, he is "responsible for all matters related to living marine resources which may arise in connection with the conduct of the functions" of NOAA. Reorganization Plan No. 4 of 1970, § 2(e)(4). This empowers him to make rules under more than fifty discrete legislative acts, like the Endangered Species Act (16 U.S.C. §§ 1531–1543); Antarctic Conservation Act of 1978 (16 U.S.C. §§ 2401–2412); Federal Water Pollution Control Act (33 U.S.C. § 1344); Lacey Act Amendments of 1981 (16 U.S.C. §§ 3371–3378); and, of course, Marine Mammal Protection Act (16 U.S.C. §§ 1361–1407).

76. Furthermore, the Assistant Administrator is a principal officer, rather than an inferior officer, because the Assistant Administrator is not directed and supervised by a Senate-confirmed official. In particular, he can take significant actions, including issuing rules, under fifty plus statutes without effective review.

77. Despite being a principal officer, the AA was not appointed by the President and

confirmed by the Senate, as the Appointments Clause requires. He was instead "appointed by the Secretary, subject to approval of the President." Reorganization Plan No. 4 of 1970, § 2(e)(1).

78. Therefore, even if the AA issued the Approach Rule, the Approach Rule was issued in violation of the Appointments Clause, and it must still be vacated.

***Ratification Did Not Cure the Appointments Clause Violation***

79. The NOAA Administrator's attempted ratification did not cure the Approach Rule's Appointments Clause defect regardless of who issued the Rule.

80. As an employee, the DAARP cannot issue rules consistent with the Appointments Clause. Therefore, the NOAA Administrator could not delegate to the DAARP the power to issue the Approach Rule. As a result, the NOAA Administrator could not ratify the DAARP's issuance of the Rule.

81. As the Fourth Circuit put it, "[NOAA Administrator] Spinrad could ratify only those acts of [DAARP] Rauch that he could have originally delegated. And Spinrad could delegate (and therefore ratify) only those acts of Rauch that were ministerial and did not require independent discretion." *Wille*, 158 F.4th at 550 (citations omitted).

82. Even if the Assistant Administrator issued the Approach Rule, the ratification is still invalid. Janet Coit, the Assistant Administrator at the relevant times, was improperly appointed and so could not issue rules. Therefore, the NOAA Administrator could not delegate to Coit the power to issue the Approach Rule. As a result, the NOAA Administrator could not ratify Coit's issuance of the Rule.

83. Additionally, the NOAA Administrator's ratification is *ultra vires* because no express statutory authority empowers him to ratify rules. Such express authority is necessary because ratification is a retroactive action and so can be vested in an agency official only with a clear statement. No such clear statement exists.

84. Because the NOAA Administrator's attempted ratification could not cure the unconstitutional issuance of the Approach Rule, the Approach Rule must be vacated.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

1. A judgment declaring that the Approach Rule violates the Appointments Clause;

2. A permanent prohibitory injunction setting aside the Approach Rule and forbidding Defendant from enforcing the Approach Rule because it violates the Appointments Clause;

3. An award of reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other applicable authority; and

4. Any other relief that the Court deems just and proper.

DATED: August 14, 2026.

Respectfully submitted,

/s/ Michael Poon
Michael Poon
Cal. Bar No. 320156*
Nathan J. Kane
Wis. Bar No. 1119329*
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd. Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
MPoon@pacificlegal.org
NKane@pacificlegal.org

Damien M. Schiff
Cal. Bar No. 235101*
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
DSchiff@pacificlegal.org

*Pro Hac Vice Applications Forthcoming*

/s/ John I. Harris III
John I. Harris III
Tenn. BPR No. 12099
SCHULMAN, LEROY & BENNETT PC
3310 W. End Ave. Suite 460
Nashville, TN 37203
Telephone: (615) 244-6670
JHarris@slblawfirm.com

*Attorneys for Plaintiff*